UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE CO. | CIVIL ACTION NO. 11-1673 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| LOGANSPORT GAMING, L.L.C., LOGANSPORT TRUCKSTOP, L.L.C. and SABINE RIVER RESTAURANT | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

The Plaintiff, Scottsdale Insurance Company ("Scottsdale"), filed this declaratory judgment action to have the Court delineate the rights and responsibilities of the parties with respect to Policy No. CPS1236924 (the "Policy") issued by Scottsdale to the Defendants, Logansport Gaming, L.L.C., Logansport Truckstop, L.L.C., and Sabine River Restaurant (collectively "Logansport"). Scottsdale urges the Court ultimately to find that it is entitled to a declaration of no coverage, contending that Logansport did not maintain a fire suppression system in complete working order as required by the Policy. Currently before the Court is Scottsdale's motion for summary judgment, seeking a determination by the Court that Logansport is not entitled to coverage based on the undisputed facts and the language of the Policy. [Record Document 27]. After a thorough review of the record, the Court concludes that based on the undisputed facts, the language of the

Policy, and the applicable law, Scottsdale's motion [Record Document 27] shall be **GRANTED**.

## FACTUAL BACKGROUND

The facts of this case are largely undisputed. The Policy issued by Scottsdale to Logansport was for commercial general liability and property insurance, insuring property located at 2200 Main Street in Logansport, Louisiana.[1] The Policy contains a Protective Safeguards Endorsement, which sets forth in pertinent part:

**PROTECTIVE SAFEGUARDS**

A.  The following is added to the Commercial Property Conditions

   **PROTECTIVE SAFEGUARDS**

   1.  As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above [Fire Extinguishers and Ansul System].

   2.  The protective safeguards to which this endorsement applies are identified by the following symbols:
       . . .
       "P-9" The protective system described in the Schedule [Fire Extinguishers and Ansul System].

B.  The following is added to the EXCLUSIONS section of the Causes of Loss- Special Form:

   We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

---

[1] Evidently, this property contains a truck stop, convenience store, and restaurant.

    1.    Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

    2.    Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

Record Document 1-2, pp. 6-7.

The fire suppression system lies at the heart of this case. Logansport had a fire suppression system located in the vent hood above the stove in the restaurant kitchen. On January 31, 2011, a fire occurred at Logansport's property, and it submitted a claim to Scottsdale that same day.[2] The parties agree that at the time of the fire, the fire suppression system did not activate. Logansport concedes that it was required to maintain the system and have it inspected periodically.

Scottsdale hired Cunningham Lindsey, Inc. to conduct a preliminary investigation. Cunningham Lindsey hired U.S. Forensic, L.L.C. to determine the cause and origin of the fire. U.S. Forensic's findings concluded that the fire originated in the kitchen on the south end west wall of the gas cooktop and that the fire was caused by the unattended use of the kitchen cooktop. U.S. Forensic found that the fire suppression system did not activate at the time of the fire because (1) the carbon dioxide cylinder ("CO2 cylinder"), which was necessary to allow the

---

[2] There is no dispute that the fire occurred during a time covered by the Policy.

suppression system to activate, was missing from the system, and (2) a grease build-up throughout the cooktop and fire suppression system's components prevented the detection cable from activating the system at the time of the fire. Prior to the January fire, Logansport's system was last serviced by Ark-La-Tex Fire Systems either in July 2010, according to Wayne Yates ("Yates"), or August 2010, according to Leon Militello ("Militello"). (Both Yates and Militello have an ownership interest in Logansport.)

On April 29, 2011, Scottsdale sent Logansport a letter stating that it questioned the impact of the Protective Safeguards Endorsement on Logansport's claim. On July 14, 2011, Scottsdale took the depositions of Miletello and Casey Stewart ("Stewart"), a Logansport employee. Militello testified that Ark-La-Tex Fire Systems was hired to conduct semi-annual inspections and perform maintenance on the fire suppression system. According to Militello, Ark-La-Tex Fire Systems inspected the unit in August of 2010 (as previously indicated) and left the unit in working order. Ark-La-Tex Fire Systems was scheduled to return in February of 2011 for another inspection. Stewart testified at her deposition that Logansport owned the fire suppression system, rather than leasing it from Ark-La-Tex Fire Systems.

Scottsdale then hired Scott Howell of Rimkus Consulting Group, Inc. to "determine if the hood and duct fire suppression system had been maintained in

such a condition that it should have operated." Record Document 19-5, p. 1. Rimkus's report, dated July 27, 2011, concluded that the fire suppression system did not activate and that even if it had, it would not have been effective in suppressing the fire, as the $CO_2$ cylinder and at least two nozzles were missing from the system at the time of the fire. See id.

Scottsdale filed the instant suit on September 15, 2011, seeking a declaration that the Policy does not provide coverage for the damages occasioned by the January 31, 2011 fire. Logansport filed a counter-claim asserting that Scottsdale was liable for statutory penalties, pursuant to Louisiana Revised Statutes 22:1892 and 22:1973. In a memorandum ruling issued September 25, 2012, the Court dismissed Logansport's claim for statutory penalties. See Record Document 44. Scottsdale has filed the instant motion seeking a complete dismissal of Logansport's claims, asserting that there is no genuine dispute regarding whether Logansport violated the Protective Safeguards Endorsement. See Record Document 27. Logansport opposes the motion for summary judgment, contending that it complied with the Policy by acting with due diligence and in a reasonably prudent manner in maintaining the fire suppression system. See Record Document 29.

## LAW AND ANALYSIS

I.  Motion for Summary Judgment.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be

denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005). However, a factual controversy only exists when "both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

II.     The Policy

Upon examination of the Policy, it appears that there are three potentially significant clauses governing coverage. These will be addressed in turn below. First, as a condition of insurance, the Policy requires Logansport "to maintain" its fire extinguishers and fire suppression system. The word "maintain" is not defined by the Policy. Nonetheless, the parties disagree not over the meaning of the word itself, but instead over what is necessary to satisfy this maintenance standard. Scottsdale submits that maintenance of the fire suppression system indubitably would have resulted in it being fully functional and operational at the time of the fire, while Logansport contends that its contract with Ark-La-Tex Fire Systems was sufficient to comply with this provision. Ultimately, the Court holds that whether Logansport maintained the fire suppression system is a disputed issue of fact, properly left for a jury's determination. In other words, it should be left to a jury to resolve the question of whether Logansport's contract with Ark-La-Tex Fire Systems was sufficient to satisfy the requirement that it "maintain" the system. See Charles Stores, Inc. v. Aetna Ins. Co., 428 F.2d 989 (5th Cir. 1970)(holding that determination of whether insured maintained sprinkler and alarm systems was "classic issue for jury," who could decide if systems were in working order and if not, whether insured knew that); Charles Stores v. Aetna Ins. Co., 490 F.2d 64 (5th Cir.

1974)(concluding that directed verdict for insurer was inappropriate, as the determination of whether the insured complied with its duty to maintain sprinkler and alarm systems was decision for the jury; policy language was not so sweeping or broad as to make the insured the "guarantor of the continuing effectiveness of safeguard devices so long as it is in control of the premises . . . ."). As such, the Court will not grant summary judgment on the basis of this provision, as there are too many issues of material fact left to be resolved.

The second provision concerning coverage is found in the exclusion paragraph. There, coverage is excluded if prior to the fire, Logansport "knew of any suspension or impairment in any protective safeguard . . . and failed to notify Scottsdale of that fact." In opposing the motion for summary judgment, Logansport repeatedly and unsuccessfully invokes this paragraph, maintaining that the record is devoid of any evidence to show that it knew the fire suppression system would not work. However, for obvious reasons, including the absence of any facts remotely implicating this paragraph, this provision is not relevant. Indeed, it is not even urged by Scottsdale as a basis upon which summary judgment should be granted. The Court finds that this exclusion is not germane to the case at bar, and consequently finds that the grant of summary judgment does not rise or fall on the basis of this provision. Rather, coverage is barred in a third way pursuant to a

provision which excludes coverage if Logansport "failed to maintain any protective safeguard . . ., and over which [it] had control, in complete working order." Significantly, unlike the first provision discussed previously, the word "maintain" is not read in isolation here. Instead, it is modified by the phrase "in complete working order." Thus, it is not sufficient for Logansport merely to maintain the fire suppression system. Rather, Logansport is required to maintain the system **in complete working order**. Although the Policy itself fails to define the word maintain, dictionaries define it in the following ways:

- "to care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep" (Blacks Law Dictionary, 9th ed. 2009);

- "cause or enable (a condition or situation) to continue; keep (something) at the same level or rate; keep (a building, machine, or road) in good condition by checking or repairing it regularly" (Oxford Dictionaries Online); and

- "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline" (Merriam-Webster).

Thus, to comply with the Policy, Logansport had to keep the fire suppression system in good condition and preserve it from failing.[3] This requirement is further heightened by the specification that the system be maintained in complete working order.

---

[3] Interestingly, Logansport does not disagree with similar definitions proposed by Scottsdale, nor does it offer its own definition for the word that plainly lies at the crux of the case.

To reach this conclusion, the Court found persuasion in <u>Brookwood, LLC v. Scottsdale Insurance Co.</u>, 2009 WL 2525756 (E.D. La. Aug. 17, 2009). There, in examining a burglary and robbery protective safeguards provision, the court found that by requiring the insured to maintain a burglary alarm, the policy required the insured to "have a functioning, operational burglar alarm system . . . and to keep that system operational through the life of the contract of insurance." <u>Id.</u> at *3. The Court agrees with this determination.

Although Scottsdale urges the Court to believe that the Fifth Circuit Court of Appeals has defined maintain as "functioning and operational," citing <u>Charles Stores, Inc. v. Aetna Insurance Co.</u>, 428 F.2d 989 (5th Cir. 1970), this Court finds the case offers no support for that premise. Rather, <u>Charles Stores</u> stands for the proposition that a provision requiring the insured to "maintain so far as is within his control such protective safeguards . . . for which credit in rate has been granted" results in a "classic jury determination of whether the systems were in working order and if not whether with the knowledge or by the control of the appellant." <u>Id.</u> at 991. If the Policy in question here contained only a provision requiring Logansport to "maintain" the fire suppression system, the Court would follow the teachings of <u>Charles Stores</u> and conclude that a jury should properly determine whether Logansport complied with the Policy, as discussed previously. The crucial

distinction here, however, is that Logansport not only was required to maintain the system, but to maintain it in complete working order. Thus, to obtain coverage, Logansport cannot rely exclusively on its contract with Ark-La-Tex Fire Systems. To the contrary, the Court concludes that the fire suppression system had to be working at the time of the fire. Critically, Logansport concedes that the system was not working on the date of the fire.[4] Because there is no dispute that the system was not in working order at the time of the fire, the grant of summary judgment is appropriate on these facts.

Logansport's opposition to Scottsdale's motion for summary judgment fails to change the Court's opinion. First, Logansport submits that "[i]n order for Scottsdale to deny coverage they have the burden of proving that Logansport either intentionally did something to inactivate the system or had PRIOR knowledge that it would not operate." Record Document 29, p. 5. (emphasis in original). Second, Logansport argues that Scottsdale has the burden of establishing that Logansport failed to act with "due diligence" or in a "reasonably prudent manner in maintaining the fire suppression system." Id. at p. 6. Simply put, Logansport's contentions are inconsistent with the Policy language itself. More problematic is that

---

[4] Curiously, in conceding that the system did not function properly, Logansport notes that "that is not what is required by Scottsdale in its policy." Record Document 29, p. 7.

Logansport does nothing to explain the basis for its position, nor point to a place in the Policy where the standards of due diligence or reasonably prudent behavior are incorporated. Further, by arguing that it had no knowledge that the system was not working and it "did everything that it could do and was required to do by having Ark-La-Tex perform the service and inspection on the unit," id. at 7, Logansport effectively disregards the thrust of Scottsdale's argument, which is that the system was not maintained in complete working order. Logansport has provided the Court with no jurisprudence to support any of its contentions, nor has it offered any textual support from the Policy itself. In short, in defending this motion and the case in general, Logansport has come forward with nothing to demonstrate why a straight-forward reading of the Policy, which gives import to each of the words in the pertinent provisions, is inappropriate.

      Accordingly, based on the undisputed facts, the language of the Policy, the pleadings, and the applicable law, the Court finds that there are no genuine issues of material fact precluding summary judgment in favor of Scottsdale.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Scottsdale's motion for summary judgment [Record Document 27] be and is hereby **GRANTED**. A judgment consistent with the instant memorandum ruling shall issue herewith.

THUS DONE AND SIGNED on this 5th day of December, 2012.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE